UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:12-cr-095 |
| | : | |
| v. | : | **SUPERSEDING INDICTMENT** |
| | : | |
| (4) ANTONIO HOWARD | : | 18 U.S.C. § 2 |
| a/k/a "T.O." | : | 21 U.S.C. § 841(a)(1) |
| (5) RANDY STEELE | : | 21 U.S.C. § 841(b)(1)(A)(vii) |
| (6) BRUCE STEWART | : | 21 U.S.C. § 841(b)(1)(B)(vii) |
| a/k/a "Donnie" | : | 21 U.S.C. § 846 |
| (7) DARIAS JACKSON | : | 21 U.S.C. §§ 853(a),(p) |
| a/k/a "Jizzle" | : | 21 U.S.C. § 860 |
| (8) MONSANNA TORBERT | : | 18 U.S.C. § 982(b)(1) |
| a/k/a "Tyrone" or "Suki" | : | 18 U.S.C. § 1952(a)(1) |
| (9) MASAI TORBERT | : | 18 U.S.C. § 1956(a)(1)(A)(i) |
| (10) ROGER GARVEY | : | 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES THAT:**

**COUNT 1**

Beginning from in or about March 1, 2012, the exact date being unknown to the grand jury, and continuing up to and including August 29, 2012, in the Southern District of Ohio and elsewhere, **ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," MONSANNA TORBERT, a/k/a "Tyrone" or "Suki", MASAI TORBERT, and ROGER GARVEY,** the defendants herein, and others both known and unknown to the grand jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, and with MASAI WILLIAMS a/k/a "Lee," DAVID ALEXANDER a/k/a "Dirty," and QUINCY SHOWES, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully distribute and possess with intent to distribute one thousand

kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance; in violation of 21 U.S.C. § 846 & §§ 841(a)(1), (b)(1)(A)(vii).

## MEANS AND METHODS

At all times herein, "marijuana" refers to the Schedule I controlled substance illegally possessed and/or distributed.

It was a part of the conspiracy that WILLIAMS and ALEXANDER would speak directly to the marijuana source of supply located in Dallas, Texas, and make arrangements for loads of marijuana to be sent to the Cincinnati, Ohio area.

It was further a part of the conspiracy that once the shipments of marijuana reached Cincinnati, Ohio the marijuana was given to SHOWES, who acted as a drug stash house keeper and who would arrange to distribute the marijuana to **STEWART, STEELE, HOWARD, JACKSON, MONSANNA TORBERT, MASAI TORBERT** and others.

It was further a part of the conspiracy that members of the conspiracy would then distribute the drugs in order to obtain U.S. currency and other things of value such as vehicles.

It was further a part of the conspiracy that members of the conspiracy utilized a variety of locations for meetings and transfers of U.S. currency and marijuana, and that some of these locations were within one thousand feet of real property comprising elementary schools and playgrounds.

It was further a part of the conspiracy that members of the conspiracy utilized various methods to transfer U.S. currency, proceeds of their illegal narcotics trafficking, from the Southern District of Ohio to their suppliers of illegal narcotics and to others they believed were in league with their suppliers, one such method entailing the use of a courier who would be perceived to be performing a legitimate job as a FedEx driver/delivery person.

2

In furtherance of the conspiracy and in order to accomplish its objectives, the defendants, MASAI WILLIAMS, DAVID ALEXANDER, QUINCY SHOWES, **ANTONIO HOWARD, RANDY STEELE, BRUCE STEWART, DARIAS JACKSON, MONSANNA TORBERT, MASAI TORBERT, and ROGER GARVEY** committed, among others, the following:

## OVERT ACTS

1. On May 25, 2012, WILLIAMS and ALEXANDER transferred approximately $500,000 in U.S. Currency - proceeds of illegal marijuana trafficking - to a person they believed to be associated with the source of supply for marijuana.

2. On June 5, 2012, WILLIAMS transferred approximately $400,000 in U.S. Currency - proceeds of illegal marijuana trafficking - to a person he believed to be associated with the source of supply for marijuana.

3. On July 7, 2012, WILLIAMS engaged in a telephone conversation with his marijuana source of supply, discussing a sample of marijuana that was to be delivered to the Cincinnati, Ohio area later that day.

4. On July 7, 2012, WILLIAMS and **STEWART** engaged in a series of telephone conversations discussing the delivery of the sample of marijuana. During these calls, **STEWART** agreed to meet the courier on behalf of WILLIAMS at 2888 Fischer Place, Cincinnati, Ohio.

5. On July 7, 2012, at approximately 8:30 pm, **STEWART** met with the courier and took possession of a sample (approximately 1 kilogram) of what appeared to be marijuana.

6. On July 7, 2012, WILLIAMS and **MASAI TORBERT** engaged in a series of telephone conversations, during these calls, WILLIAMS agreed to meet **MASAI TORBERT** at **MASAI TORBERT's** "spot" that evening to discuss a sample of marijuana delivered to **STEWART** that day.

3

7. On July 8, 2012, WILLIAMS and **MASAI TORBERT** engaged in a telephone conversation, during the call WILLIAMS asked **MASAI TORBERT** what price **MASAI TORBERT** needed to get his marijuana from WILLIAMS in order to sell the marijuana WILLIAMS had just received. During the call **MASAI TORBERT** never gave WILLIAMS a price but stated to WILLIAMS that he was ready to take possession of marijuana and had no complaints with the quality.

8. On July 8, 2012, WILLIAMS engaged in a series of telephone conversations with his marijuana source of supply discussing a delivery of approximately 320 pounds of marijuana that was to be delivered to WILLIAMS and ALEXANDER later that same day.

9. On July 8, 2012, WILLIAMS engaged in a series of telephone conversations with SHOWES where SHOWES agreed to meet the courier and take possession of a marijuana shipment.

10. On July 8, 2012, at 2851 Shaffer Avenue, Cincinnati, Ohio, SHOWES met the courier and took possession of the marijuana shipment. SHOWES and WILLIAMS engaged in telephone conversations and SHOWES described the marijuana to WILLIAMS and complained to WILLIAMS about the quality of the marijuana.

11. On July 8, 2012, WILLIAMS engaged in telephone conversations with his marijuana source of supply during which WILLIAMS complained to the source of supply about the quality of the marijuana.

12. On July 8, 2012, WILLIAMS engaged in telephone conversations with SHOWES during which SHOWES stated that he was going to come to WILLIAMS' apartment to bring WILLIAMS a sample of the marijuana that was delivered in order to show WILLIAMS the poor quality of the marijuana.

13. On July 9, 2012, WILLIAMS engaged in telephone conversations with ALEXANDER during which the two discussed the fact that they needed to talk with the marijuana source of supply about the quality of the marijuana that was delivered. In addition, WILLIAMS and ALEXANDER discussed how much they would charge people for the marijuana that was delivered.

14. On July 9, 2012, WILLIAMS, ALEXANDER and SHOWES met at 2851 Shaffer Avenue, Cincinnati, Ohio, which was utilized by WILLIAMS and ALEXANDER and their drug trafficking organization. **STEWART** met them there and picked up a package of marijuana from SHOWES.

15. On July 9, 2012, WILLIAMS engaged in telephone conversations with **MONSANNA TORBERT** where WILLIAMS advised **MONSANNA TORBERT** how to take delivery of a shipment of marijuana from SHOWES, and **MONSANNA TORBERT** describes how he will sell it.

16. On July 10, 2012, WILLIAMS engaged in telephone conversations with **MONSANNA TORBERT** where the two affirmed that **MONSANNA TORBERT** had received the marijuana.

17. On July 10, 2012, WILLIAMS and SHOWES planned to meet at 2851 Shaffer Avenue in order to arrange for a delivery of marijuana to **STEELE** for the purpose of distribution.

18. On July 10, 2012, SHOWES met with **STEELE** at 3277 Werk Road where SHOWES transferred a large cardboard box appearing to contain marijuana to **STEELE**.

19. On July 10, 2012, WILLIAMS engaged in telephone conversations with the marijuana source of supply where the two discussed the need to meet in order to discuss their illegal drug trafficking business.

20. On July 10, 2012, WILLIAMS and ALEXANDER then met with the source of marijuana supply at an outlet mall in the Cincinnati, Ohio, area.

21. On July 11, 2012, WILLIAMS engaged in telephone conversations with SHOWES during which WILLIAMS directed SHOWES to deliver approximately 50 pounds of marijuana to "T.O." (**Antonio HOWARD**), at 2888 Fischer Place, Cincinnati, Ohio.

22. On July 11th, 2012, at 2888 Fischer Place, Cincinnati, Ohio, **HOWARD** took possession of the shipment of marijuana from SHOWES, for the purpose of distributing it to others.

23. On July 11, 2012, WILLIAMS engaged in telephone conversations with **MASAI TORBERT** where **MASAI TORBERT** advised WILLIAMS that he had money to deliver to WILLIAMS and asked if WILLIAMS had any more marijuana left to sell.

24. On July 13, 2012, WILLIAMS engaged in a telephone conversation with **MASAI TORBERT** where **MASAI TORBERT** asked if WILLIAMS if everything was still moving okay referring to the marijuana WILLIAMS had received on July 8, 2012.

25. On July 17, 2012, WILLIAMS engaged in telephone conversations with his marijuana source of supply during which the two discussed WILLIAMS' preparation of $100,000 in illegal drug proceeds for the source of supply.

26. On July 17, 2012, SHOWES purchased two white shopping boxes from a Walgreens located on Harrison Avenue as he and WILLIAMS discussed the best type of boxes to use.

27. On July 17, 2012, WILLIAMS, ALEXANDER, SHOWES and **STEWART** drove to and from 2888 Fischer Place, Cincinnati, Ohio, 3478 Hazelwood Avenue, Cincinnati, Ohio, 2851 Shaffer Avenue, Cincinnati, Ohio, 2545 Meyerhill Drive, Cincinnati, Ohio and 2516 Orland Avenue, Cincinnati, Ohio throughout the day until they all met at 2847 Werk Road, Cincinnati,

Ohio. While at 2847 Werk Road, surveillance observed SHOWES deliver two empty white shipping boxes he had purchased at the Walgreens to WILLIAMS. WILLIAMS and ALEXANDER entered 2847 Werk Road with the two flat white boxes and a green roll of packing tape, then after approximately 20 minutes, WILLIAMS and ALEXANDER exited 2847 Werk Road with the two white boxes, now folded into a traditional box shape and carried by the pair as if heavy. The two placed the white boxes into the trunk of SHOWES' Lexus.

28. On July 17, 2012, WILLIAMS engaged in telephone conversations with his marijuana source of supply where WILLIAMS described to the source of supply that each white shipping box had a shoe box inside of it and that each shoe box contained $50,000.

29. On July 17, 2012, WILLIAMS, ALEXANDER and SHOWES gathered at 8273 Georgianna Drive, Cincinnati Ohio and watched as SHOWES backed his Lexus into the driveway of that address, whereupon WILLIAMS, ALEXANDER, SHOWES, **STEWART** and another male went to Buffalo Wild Wings for dinner. While at dinner, WILLIAMS engaged in telephone conversations with his marijuana source of supply, discussing when the courier would arrive and the fact that the courier was driving a FedEx van but worked for the source of supply.

30. **ROGER GARVEY**, a FedEx employee/driver whose work entailed making pickups and deliveries as instructed by FedEx, asked his supervisors at FedEx for vacation time on July 17, 2012, and further advised that the purpose of his leave was in order to attend a wedding, which was false.

31. On July 17, 2012, **GARVEY** put on his FedEx uniform, and in possession of his FedEx identification documents, traveled to Cincinnati, Ohio, in order to pick up the two white boxes that had been purchased at Walgreen's by SHOWES and into which WILLIAMS and ALEXANDER had placed over $100,000, the proceeds of illegal narcotics trafficking by the co-conspirators.

7

32. On July 17, 2012, the other male that went to Buffalo Wild Wings with WILLIAMS, ALEXANDER, SHOWES and **STEWART** gave the two white shipping boxes containing over $100,000 to **GARVEY**, who had parked his FedEx van in the driveway of 8273 Georgianna Drive, Cincinnati, Ohio, who was still wearing his FedEx uniform, and who was still carrying his FedEx identification documents. **GARVEY** took possession of the boxes despite the fact that FedEx Custom Critical does not conduct residential package pick-ups, nor does FedEx Custom Critical conduct late night package pick-ups.

33. On July 17, 2012, **GARVEY** then drove from 8273 Georgianna Drive to a nearby Wal-Mart, where he entered the store briefly and then returned to his van. **GARVEY** then traveled from the Wal-Mart to Interstate 74 west, stopped at a BP gas station in Harrison, Ohio, to refuel and then continued on Interstate 74 west, entering Indiana and traveling in the direction of Indianapolis, Indiana.

34. On July 17, 2012, at approximately 11:40 pm, during a traffic stop by the Indiana State Police of **GARVEY's** FedEx van, **GARVEY** provided false information to the Troopers about what he was doing, where he had been, and where he was going.

35. On July 17, 2012, Troopers searched **GARVEY's** van and located 3 shipping boxes -- the two white boxes referenced above and an additional brown box -- which contained $200,045.00 in U.S. Currency, the proceeds of narcotics trafficking. **GARVEY** continued to provide false information to Troopers.

36. On July 18, 2012, during an interview with Task Force Agents of the DEA Indianapolis Office, **GARVEY** suggested to one of the DEA Task Force Agents that they could just split the money and then everyone could go their separate ways.

37. On July 18, 2012, **GARVEY** was released and told Troopers and DEA agents that he intended to proceed to Chicago, but instead he returned to his home in the Toledo, Ohio, area.

38. On July 18, 2012, WILLIAMS engaged in a series of telephone conversations with **MASAI TORBERT** arranging a meeting later that day between WILLIAMS and **MASAI TORBERT**. The meeting was for WILLIAMS to pick up money from **MASAI TORBERT** for marijuana that **MASAI TORBERT** had sold on behalf of WILLIAMS. In another one of the telephone conversations that day **MASAI TORBERT** asked WILLIAMS if WILLIAMS still had any marijuana left to sell and when WILLIAMS stated that he did in fact have marijuana, **MASAI TORBERT** stated to WILLIAMS that WILLAMS should call SHOWES and have SHOWES deliver marijuana to **MASAI TORBERT**.

39. On August 1, 2012, WILLIAMS engaged in telephone conversations with co-conspirators for the purpose of arranging a meeting at WILLIAMS' home located at 3478 Hazelwood Avenue, Apartment #8, Cincinnati, Ohio. WILLIAMS met with ALEXANDER, SHOWES, **STEWART, JACKSON, MASAI TORBERT** and others, and discussed their illegal drug trafficking business.

40. On August 7, 2012, WILLIAMS engaged in telephone conversations with his marijuana source of supply and discussed the delivery of a load of over 500 pounds of marijuana due to be delivered to WILLIAMS and ALEXANDER on August 8, 2012.

41. On August 7, 2012, WILLIAMS engaged in telephone conversations with SHOWES where SHOWES was instructed to rent a U-Haul on behalf of WILLIAMS and ALEXANDER in order to transport the marijuana due to be delivered the following day.

42. On August 7, 2012, SHOWES rented a U-Haul for two days, for the purpose of transporting marijuana, through a female associate.

43. On August 8, 2012, WILLIAMS engaged in telephone conversations with his marijuana source of supply coordinating the delivery of marijuana to WILLIAMS and ALEXANDER.

9

44. On August 8, 2012, approximately 577 pounds of marijuana was delivered to the U-Haul rented by SHOWES at a location where WILLIAMS, ALEXANDER, SHOWES and **JACKSON** met to receive and coordinate its further distribution.

45. On August 15, 2012, on behalf of WILLIAMS and ALEXANDER, **MASAI TORBERT** took possession of a FedEx package that contained approximately 75 pounds of marijuana.

46. On August 30, 2012, WILLIAMS possessed a firearm, a scale, a money counter and drug preparation materials in furtherance of his illegal drug trafficking business, and approximately $60,000 in proceeds obtained through his illegal drug trafficking business.

47. On August 30, 2012, ALEXANDER possessed a firearm in furtherance of his illegal drug trafficking business.

**All in violation of 21 U.S.C. § 846.**

## COUNT 2

1. The grand jury incorporates by reference those allegations contained in Count 1 of this Indictment.

2. On or about August 8, 2012, in the Southern District of Ohio, the defendants, **ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," MONSANNA TORBERT, a/k/a "Tyrone" or "Suki," and MASAI TORBERT** did knowingly and intentionally, unlawfully possess with the intent to distribute a Schedule I Controlled Substance to wit, marijuana in excess of one hundred kilograms.

**In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii), 18 U.S.C. § 2 and Pinkerton v. United States, 328 U.S. 640 (1946).**

## COUNT 3

1. The grand jury incorporates by reference those allegations contained in Count 1 of this Indictment.

2. On or about July 9, 2012, in the Southern District of Ohio, the defendants, **ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," MONSANNA TORBERT, a/k/a "Tyrone" or "Suki," and MASAI TORBERT** did unlawfully, knowingly, and intentionally possess with intent to distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, within 1,000 feet of the real property comprising the private elementary school known as the Saint Catherine of Sienna school.

**In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 860(a), 18 U.S.C. § 2 and Pinkerton v. United States, 328 U.S. 640 (1946).**

## Forfeiture Allegation 1

The allegations contained in Counts 1 and/or 2 and/or 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853(a). As a result of the violation in Counts 1 and/or 2 and/or 3, each defendant shall forfeit to the United States:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; including but not limited to:

(a) one (1) Orange 2006 Dodge Charger 4-door bearing Ohio registration FQP6405 and VIN# 2B3KA53H56H512010 registered to Janeisha TORBERT at 5015 Sidney Road, Cincinnati, Ohio; and

(b) one (1) Green 2005 Chevrolet Corvette 2-door bearing Ohio registration FJT6596 and VIN# 1G1YY24UX55104485 registered to Lashaun BRADLEY at 2888 Fischer Place, Cincinnati, Ohio; and

(c) one (1) 1969 Oldsmobile Cutlass 2-door bearing VIN# 336679Z135871 and titled to Monique C. DUNN at 135 Rion Lane, Cincinnati, Ohio; and

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including but not limited to:

(a) one (1) Silver 2011 Ford Taurus 4-door bearing Ohio registration FDT4172 and VIN# 1FAHP2KT1BG142228 registered to Janice L. HOWARD at 2847 Werk Road, Cincinnati, Ohio; and

(b) one (1) Grey 2000 Lexus 4-door bearing Ohio registration FNW7852 and VIN# JT8BF28G3Y5078578 registered to Quentessa SHOWES at 2703 East Tower Drive #572, Cincinnati, Ohio; and

(c) one (1) Hi-Point .380 cal; Model CF380; Serial Number: P8029417 seized from 2710 E. Tower Drive, Apartment #315, Cincinnati, Ohio; Owner: Bruce Stewart. Fully loaded at time of seizure.

(d) one (1) Smith & Wesson 9mm; Model M&P; Serial Number: MPT2513 seized from 2516 Sarvis Court, Cincinnati, Ohio; Owner: Unknown. Fully loaded at time of seizure.

(e) one (1) Kel Tec 9mm Luger; Model PF9; Serial Number: S3R78 seized from 2545 Meyerhill Drive, Cincinnati, Ohio; Owner: David Alexander. Fully loaded at time of seizure.

(f) one (1) Glock .40 cal; Model 27; Serial Number: CPW470US seized from 3478 Hazelwood Avenue, Apartment #8, Cincinnati, Ohio; Owner: Masai Williams. Fully loaded at time of seizure.

(g) $200,045 seized from Roger M. Garvey (FedEx driver) during traffic stop just outside of Indianapolis, Indiana;

(h) $121,680 seized pursuant to the execution of search warrant at 2847 Werk Road, Cincinnati, Ohio;

(i) $2,600 seized pursuant to the execution of search warrant at 3478 Hazelwood Ave. #8, Cincinnati, Ohio;

(j) $2,900 seized pursuant to the execution of search warrant at 2545 Meyerhill Dr., Cincinnati, Ohio;

(k) $2,578 seized pursuant to the arrest of Randy Steele ($528 in wallet and $2,050 in glove box);

(l) $4,980 seized pursuant to the arrest of Antonio Howard and consent search of luggage found in bed of truck.

## Substitute Assets

If any of the property described in Forfeiture Allegation 1, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(a), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

## COUNT 4

On or about July 17, 2012, in the Southern District of Ohio, defendant **ROGER GARVEY** did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: accepting delivery of United States currency and then transporting said

13

currency interstate for the purpose of delivering it, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to possess and to possess with intent to distribute marijuana, with the intent to promote the carrying on of specified unlawful activity, to wit: a conspiracy to possess and to possess with intent to distribute one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance; in violation of 21 U.S.C. § 846 & §§ 841(a)(1), (b)(1)(A)(vii), and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

**All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.**

### COUNT 5

On or about July 17, 2012, in the Southern District of Ohio and elsewhere, defendant **ROGER GARVEY** did knowingly travel in interstate commerce from the State of Ohio to the State of Indiana, with the intent to distribute the proceeds of a specified unlawful activity, to wit: a conspiracy to possess and to possess with intent to distribute one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance; in violation of 21 U.S.C. § 846 & §§ 841(a)(1), (b)(1)(A)(vii), and thereafter performed and attempted to perform an act to distribute the proceeds of such unlawful activity.

**All in violation of Title 18, United States Code, Section 1952(a)(1) and 2.**

### Forfeiture Allegation 2

Upon conviction of the offense set forth in Count 4 of this Indictment, the defendant **ROGER GARVEY** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1): any property, real or personal, involved in such offense, and any property traceable to such property including, but not limited to a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted.

## Forfeiture Allegation 3

Upon conviction of the offense set forth in Count 5 of this Indictment, the defendant **ROGER GARVEY** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c): any property, real or personal, which constitutes or is derived from proceeds traceable to the offense including, but not limited to a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted.

## Substitute Assets

If any of the property described in Forfeiture Allegation 2 or 3, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL.

_____
GRAND JURY FOREPERSON

**CARTER M. STEWART**
United States Attorney

_____
**ROBERT C. BRICHLER**
**Chief, Organized Crime Drug Enforcement Task Force**